**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-21-00682-001-PHX-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| Angel Joe Valenzuela, | |
| Defendant. | |

Before the Court is the Defendant Angel Joe Valenzuela's Objection to Government's Proposed Condition of Supervised Release (Doc. 32) and the Government's Response (Doc. 35). The Court overrules the Defendant's Objection for the reasons explained below.

**I.   Background**

On December 21, 2021, the Defendant entered a guilty plea to Count One of an Indictment that charged him with Possession with Intent to Distribute Actual Methamphetamine (21 U.S.C. §§ 841(a)(1) and (b)(1)(b)(viii)). (Doc. 21). In his plea agreement, the Defendant admitted that he "possessed several small baggies, multiple scales, cell phones, a Ruger pistol, and approximately 5.67 grams of actual methamphetamine" within the Gila River Indian Community. (*Id*.) The underlying facts of the Defendant's guilty plea and conviction resulted from his encounter on the Gila River Indian Community (the "Community") with the Gila River Indian Community Police Department ("GRIC PD") on February 4, 2021. GRIC PD found the Defendant slumped

over the steering wheel in his car in a no parking zone within the Community.[1] They detected an odor of drug use and a search of his car yielded marijuana, boxes of ammunition, multiple cellular telephones, digital scales, methamphetamine, and a 9mm handgun. (Doc. 24 at 3). He was arrested and released on February 22, 2021. (*Id.*) GRIC PD later encountered the Defendant on July 8, 2021, while he was a passenger in a car driven by Blessing Antone. A search of Antone by GRIC PD yielded methamphetamine and fentanyl pills, which she claimed the Defendant handed her when they were being pulled over. Ammunition and marijuana were also found in the car. (*Id.* at 4).

At time of sentencing, the Court found that the Defendant had a Total Offense Level of twenty-three and a Criminal History Category of five. His sentencing guideline range was therefore, sixty to ninety-six months in custody. The Court sentenced the Defendant to ninety-six months in custody followed by a forty-eight month term of supervised release. (Doc. 29). During the sentencing hearing, the Government argued that while serving his supervised release term, that the Defendant "not be allowed to go on to the Gila River Indian Community." (Doc. 34 at 10). The Court permitted the Defendant ten days to file an objection to the Government's request because he had not received notice of it. (*Id.* at 16).

## II. Law and Analysis

A district court has broad, though not unfettered, discretion when setting conditions of supervised release. *United States v. Bee*, 162 F.3d 1232, 1234 (9th Cir. 1998). A district court may order a special condition of supervised release so long as the condition is (1) reasonably related to the crime, the defendant's history and characteristics, and the purposes of supervised release, including deterrence, public protection, and treatment of the offender; (2) involves no greater deprivation of liberty than is reasonably necessary; and (3) consistent with Sentencing Commission's pertinent policy statements. *United States v. Gnirke*, 775 F.3d 1155, 161 (9th Cir. 2015) (quoting 18 U.S.C. § 3583(d)). Thus,

---

[1] The Government's Response includes references to encounters that occurred before February 2021 and that were not included in the Presentence Investigation Report ("PSR"). Thus the Court will not consider them.

a condition of supervised release is permissible if it is reasonably related "to the goals of deterrence, public protection, and rehabilitation." *United States v. Weber*, 451 F.3d 552, 558 (9th Cir. 2006). But, when a supervised release condition implicates a significant liberty interest, "a district court must support its decision on the record with evidence justifying the condition." *United States v. Daniels*, 541 F.3d 915, 924 (9th Cir 2008).

Congress expressly authorized courts to impose special conditions of supervised release mandating that a defendant refrain from living in or traveling to a particular area. 18 U.S.C. § 3563(b). So, "a district court may impose a geographic or residency restriction when it is properly supported by the record and substantively reasonable." *United States v. Many White Horses*, 964 F.3d 825, 827 (9th Cir. 2020).

The Defendant objects to a special condition of his eventual supervised release that would restrict his travel to or remaining on the Gila River Indian Community. Specifically, he states that this condition "infringes on his fundamental right to a relationship with his life partner, and to free movement, and would involve a greater deprivation of liberty that is reasonably necessary to achieve the goals of deterrence, protection of the public and rehabilitation." (Doc. 32 at 2). The Defendant states that "[t]he offense occurred on the Gila River Indian Reservation, where Mr. Valenzuela's partner of 14 years resides and where the family of his children's mother lives." (*Id*.) The Government counters that it has "not requested a prohibition involving an unnamed 'life partner'" and that the "defendant is free to associate with whomever he wishes to associate with, off of the community." (Doc. 35 at 3). Further, the Government states that it has not sought "to infringe on [his] right to travel freely" just "not [to] travel to a sovereign nation" where "he has no right to travel freely" because he is not a tribal member. (*Id.* at 2). The Government also asserts that the prohibition on being on the Community is "reasonably related to the community's interest in protecting its members from the criminal conduct of the defendant[.]" (*Id*. at 3).

The Court overrules the Defendant's objection to the imposition of the special condition. Importantly, as the Government points out, the Defendant is not a member of

1  the Gila River Indian Community. Thus, it is difficult to see that a travel restriction to the
2  Community involves no greater deprivation of liberty than is reasonably necessary to meet
3  the sentencing goals established in 18 U.S.C. § 3553(a). Moreover, the Court notes that
4  the Defendant was interviewed by the PSR author. In his interview, he did not state that
5  he was in a fourteen-year relationship with a "life partner" or with anyone from the
6  Community. Rather the PSR documents that the Defendant had prior relationships with
7  individuals who live in Phoenix. (Doc. 24 at 13). The PSR further notes that his adult
8  children all reside in Phoenix and that he has been a life-long resident of Phoenix. The
9  Defendant further stated that upon his release, he intends to reside in Phoenix. Thus, it is
10 difficult to see how a prohibition from being on the Gila River Indian Community infringes
11 upon any of his rights.

12 Furthermore, in imposing the sentence, the Court observed that, based on its in-court
13 experiences, the Gila River Indian Community has a methamphetamine problem. (Doc.
14 34 at 16). It has observed that methamphetamine contributes to violent crimes, including
15 assaults and homicides, where those involved were often using methamphetamine. (*Id*.)
16 The Court specifically noted that the Defendant had a long history of illegal substance use
17 and that he was obviously supporting his substance abuse addictions by selling illegal
18 substances in the Community. (*Id*. at 12). The Government noted that the Defendant's
19 arrest on February 4 was not his only encounter with the GRIC PD, rather, it was one of
20 several in which he was found with methamphetamine and fentanyl pills. (Doc. 25 at 2).
21 Thus, the Government's point is well-taken when it argues that "[a]rrest and contact with
22 the Gila River Police Department have done nothing to stem the defendant's conduct on
23 the community, and perhaps, that is because the tribe has no jurisdiction over the
24 defendant." (*Id*.) The Court agrees. The Defendant was not deterred by his prior encounter
25 with the GRIC PD as he almost immediately returned to the Community where he was,
26 again, found with illegal substances. The Court has determined that the Defendant presents
27 a particular danger to the Gila River Indian Community and that he is in need of a deterrent
28 from returning, especially where law enforcement have limited authority to address his

conduct.

Finally, the Defendant states that should the Court impose the special condition, he is entitled to a hearing pursuant to Rule 32.1(c) and *United States v. Napier*, 463 F.3d 1040, 1042 (9th Cir. 2006). (Doc. 32 at 6). *Napier* does not support the Defendant's position because, there, the district court told Napier that the terms of his supervised release will be provided in a final judgement. 463 F.3d at 1042. So, the court did not orally pronounce them. *Id.* Here, the Court provided notice to the Defendant of the proposed condition and gave him an opportunity to set forth his objection to it. Defendant's written objection satisfies Rule 32.1(c)'s notice provisions, including Defendant's right to counsel and his right to be heard before the Court imposes the supervised release condition.

Accordingly,

**IT IS ORDERED** that the Defendant's Objection to the Government's Proposed Conditions of Supervised Release (Doc. 32) is **overruled**.

**IT IS FURTHER ORDERED** amending the Judgment and Commitment Order to include the following Special Condition of Supervised Release: The Defendant shall not travel to or remain on the Gila River Indian Community while on supervised release, and the Probation Officer will verify compliance.

Dated this 19th day of May, 2022.

Honorable Diane J. Humetewa
United States District Judge